**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5650-16T4
     A-1714-17T4
     A-0075-18T4
     A-3428-18T4

CHRISTOPHER J. GRAMICCIONI,

  Petitioner-Appellant,

v.

DEPARTMENT OF LAW AND
PUBLIC SAFETY,

  Respondent-Respondent.

_____

GREGORY J. SCHWEERS,
JACQUELYNN F. SEELY and
RICHARD E. INCREMONA,

  Petitioners-Appellants,

v.

DEPARTMENT OF LAW AND
PUBLIC SAFETY,

  Respondent-Respondent.

_____

MONMOUTH COUNTY
PROSECUTOR'S OFFICE,
CHRISTOPHER J. GRAMICCIONI,
GREGORY J. SCHWEERS,
JACQUELYNN F. SEELY, and
RICHARD E. INCREMONA,

      Petitioners-Appellants,

v.

DEPARTMENT OF LAW AND
PUBLIC SAFETY,

      Respondent-Respondent.

_____

> Argued (A-5650-16/A-1714-17/A-0075-18) April 4, 2019 and Submitted (A-3428-18) May 3, 2019 – Decided June 7, 2019
>
> Before Judges Simonelli, Whipple and Firko.
>
> On appeal from the New Jersey Department of Law and Public Safety.
>
> Robyn B. Gigl argued the cause for appellants (GluckWalrath LLP, attorneys; Robyn B. Gigl, of counsel and on the briefs; Victoria Flynn, on the briefs).
>
> Daniel M. Vannella, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Daniel M. Vannella, on the briefs).

A-5650-16T4

PER CURIAM

In these consolidated appeals, the Monmouth County Prosecutor's Office (MCPO), Monmouth County Prosecutor Christopher J. Gramiccioni, and former Monmouth County Assistant Prosecutors Gregory J. Schweers, Jacquelynn F. Seely, and Richard E. Incremona (collectively, appellants), appeal from the July 6, 2017, October 27, 2017, August 2, 2018, and March 19, 2019 orders of the Department of Law and Public Safety refusing, in part, appellants' request for defense and indemnification.

On June 16, 2015, Philip Seidle, an off-duty Neptune Township police sergeant, shot and killed his ex-wife Tamara Wilson-Seidle with his service weapon. Wilson-Seidle's estate (Estate) brought a lawsuit in the United States District Court for the District of New Jersey, <u>Kirsten Siedle, et al. v. Neptune Township, et al.</u>, No. 17-4428 (D.N.J. June 16, 2017), against appellants, as well as other law enforcement agencies.

The Estate has filed one complaint and three amended complaints in the district court. Each complaint describes Seidle's history of domestic violence towards Wilson-Seidle in the years preceding the fatal shooting. The original complaint, filed on June 16, 2017, named the MCPO and Gramiccioni as defendants and alleged they failed to properly protect Wilson-Seidle, permitted

3

Seidle to remain on the police force, and improperly returned Seidle's service weapons after they were civilly seized.

On June 21, 2017, the MCPO and Gramiccioni sought defense and indemnification from the New Jersey Attorney General. On July 6, 2017, the Attorney General issued a written decision granting in part and denying in part the request. Relying upon State v. Wright, 169 N.J. 422 (2001), the Attorney General distinguished claims arising from "classic" law enforcement activities, which the Attorney General must defend and indemnify, from administrative functions, which are carried out on behalf of the county and are not eligible for defense and indemnification. The Attorney General parsed the original complaint and agreed to defend and indemnify the following claims:

- failing to conduct a criminal investigation (including failing to monitor evidence of stalking, failing to conduct a proper internal affairs investigation and failing to prohibit discriminatory or disparate treatment of Tamara [Wilson-]Seidle) and prosecute Philip Seidle . . . ;

- failing to provide law enforcement protection to a victim of domestic violence . . . [;]

- failing to respond properly at the scene . . . ;

- failing to supervise at the scene . . . ;

- failing to file (or assist Tamara Wilson-Seidle in filing) a restraining order against Philip Seidle. . . [;]

4

- failing to follow the New Jersey Attorney General Guidelines to the extent the claim alleges a failure to conduct a criminal investigation and/or prosecute . . . .

However, the Attorney General refused to defend and indemnify claims related to what he determined were a prosecutor's administrative functions:

- failing to properly supervise, monitor, train, retain, and discipline officers . . . ;

- permitting and allowing Philip Seidle to remain employed . . . ;

- permitting and allowing Philip Seidle to possess a service weapon, or any weapon . . . ;

- failing and refusing to keep Philip Seidle disarmed . . . ;

- permitting Philip Seidle to be reinstated [following a previous suspension] . . . ;

- failing to follow the New Jersey Attorney General Guidelines for handling domestic violence complaints and incidents involving law enforcement (with the exception of any claim for failure to conduct a criminal investigation and/or prosecute) . . . ;

- returning Philip Seidle's service weapon . . . [;]

- failing to conduct an administrative investigation . . . .

The MCPO and Gramiccioni appealed. A-5650-16T4.

5

Meanwhile, on October 2, 2017, the Estate filed its first amended complaint and added former Monmouth County assistant prosecutors Schweers, Seely and Incremona (AP defendants) as defendants. The first amended complaint alleged that in 2012 the Neptune Township Police Department, the MCPO, Gramiccioni and the AP defendants disciplined, suspended and seized Seidle's services weapons because he cancelled a dispatch call from Wilson-Seidle related to domestic violence. Seidle was found unfit for duty and underwent counseling. The first amended complaint further alleges that months later, the Neptune Township Police Department, the MCPO and Gramiccioni reinstated Seidle and returned his weapons, notwithstanding escalating domestic violence. The complaint also alleges Gramiccioni, Schweers, Seely and Incremona failed to take mandated action in response to observed warning signs of domestic violence and provide assistance to the victim.

The AP defendants sought defense and indemnification from the Attorney General. On October 27, 2017, the Attorney General declined their request, because the decisions related to Seidle's employment status, the return of his service weapons, and the failure to keep Seidle disarmed were related to the prosecutors' administrative functions. The AP defendants filed a notice of

appeal. A-1714-17. We consolidated the AP defendants' appeal with A-5650-16.

On April 20, 2018, United States District Court Judge Michael Shipp dismissed with prejudice the Estate's claims in the first amended complaint against the MCPO and Gramiccioni in their official capacities and in connection with their law enforcement investigatory functions. The Estate filed a second amended complaint, and the MCPO and Gramiccioni again requested defense and indemnification from the Attorney General. On August 2, 2018, the Attorney General declined their request and found "the claims asserted in the [s]econd [a]mended [c]omplaint pertain[ed] to administrative functions for which [the Attorney General] denied representation in connection with the initial complaint." Appellants filed a notice of appeal, A-0075-18,[1] and we consolidated that appeal with cases A-5650-16 and A-1714-17.

On December 11, 2018, Judge Shipp dismissed the Estate's second amended complaint for failure to plead claims with particularity and noted all

_____

[1] The Attorney General's August 2, 2018 letter was specifically addressed to the MCPO and Gramiccioni, but the appeal of the decision is on behalf of all five appellants. Because this distinction is immaterial for our purposes and due to the significant overlap between the claims at issue, we use "appellants" to refer to all five parties seeking defense and indemnification from the Attorney General.

claims against the MCPO and Gramiccioni connected with their law enforcement and investigatory functions were previously dismissed with prejudice. Judge Shipp made no finding as to whether specific actions were administrative or law enforcement functions.

Judge Shipp was unable to discern which legal theory the Estate was alleging against which defendant, as well as the facts associated with those claims. The Estate was given "one final opportunity to cure the deficiencies" in their pleadings and it filed a third amended complaint on January 25, 2019. The third amended complaint alleges appellants permitted the re-arming of Seidle without condition despite knowledge of his unfitness. Regarding the failure to train, supervise and discipline, the third amended complaint alleges Gramiccioni failed to oversee, train and supervise the AP defendants and that the AP defendants failed to oversee, train and supervise police officers consistent with the Attorney General's guidelines. The third amended complaint also claims the AP defendants failed to help Wilson-Seidle obtain a restraining order in compliance with the Attorney General's guidelines to protect victims of domestic violence.[2]

---

[2] Appellants' motion to dismiss the third amended complaint is pending in federal court at the time of this writing.

We requested supplemental briefing to clarify how the third amended complaint affected the consolidated appeals, and we received briefs on March 12, 2019. On March 19, 2019, the Attorney General denied appellants' request for defense and indemnification related to the third amended complaint. On April 12, 2019, appellants filed a notice of appeal and subsequently moved to consolidate with the prior appeals, which we granted. A-3428-18.

Within this framework, we review each appeal in turn.

I.

Our first inquiry is whether the Attorney General properly denied defense and indemnification to the MCPO and Gramiccioni for actions related to Seidle's continuing employment, the return of Seidle's service weapons, the failure to follow the Attorney General's guidelines for handling domestic violence complaints and the failure to conduct an administrative investigation.

"We review the Attorney General's administrative determination in accordance with a deferential standard of review." Lavezzi v. State, 219 N.J. 163, 171 (2014). The Attorney General's action carries a "strong presumption of reasonableness." Aqua Beach Condo. Ass'n v. Dep't of Cmty. Affairs, 186 N.J. 5, 16 (2006) (quoting City of Newark v. Nat. Res. Council, 82 N.J. 530, 539 (1980)). We will "not reverse the Attorney General's determination unless

it is arbitrary, capricious or unreasonable or it is not supported by substantial credible evidence in the record as a whole." Lavezzi, 219 N.J. at 171 (quoting Prado v. State, 186 N.J. 413, 427 (2006)). "Moreover, '[a] reviewing court may not substitute its own judgment for the agency's, even though the court might have reached a different result.'" Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 158 (2018) (alteration in original) (quoting In re Stallworth, 208 N.J. 182, 194 (2011)). Although we defer to an administrative agency's findings of fact, "to the extent that the Attorney General's determination constitutes a legal conclusion, we review it de novo." Lavezzi, 219 N.J. at 172.

The Attorney General owes defense and indemnity to "State employee[s]." N.J.S.A. 59:10-1. County prosecutors, like appellants herein, occupy the "hybrid role" of serving both the State and county. Lavezzi, 219 N.J. at 174-75. When county prosecutors exercise their law enforcement authority, they are acting on behalf of and accountable to the State. N.J.S.A. 2A:158-4; Lavezzi, 219 N.J. at 174; see also Coleman v. Kaye, 87 F.3d 1491, 1499 (3d Cir. 1996) ("It is well established that when county prosecutors execute their sworn duties to enforce the law by making use of all of the tools lawfully available to them to combat crime, they act as agents of the State."). When county prosecutors

10

"perform administrative tasks unrelated to their strictly prosecutorial functions, such as a decision whether to promote an investigator, the county prosecutor in effect acts on behalf of the county that is the situs of his or her office." Lavezzi, 219 N.J. at 175 (quoting Coleman, 87 F.3d at 1499).

In Wright, our Supreme Court explained the Attorney General must defend and indemnify county prosecutors "for the tortious actions" committed "in the performance of their law enforcement duties." 169 N.J. at 452. However, when county prosecutors are sued for actions performed while carrying out administrative tasks, they are not considered "agents" or "officers" of the State and no defense and indemnification is owed. Ibid. In Wright, the county prosecutor was entitled to indemnification because the alleged wrongs occurred during the investigation, arrest and prosecution of a criminal defendant. Id. at 453.

The Lavezzi Court explained the distinction between law enforcement and administrative actions:

> the question is not whether the underlying liability has any nexus to law enforcement; a personnel or organizational decision is deemed administrative even if it affects the manner in which the prosecutor's office administers its law enforcement responsibilities. Instead, the test is whether the act or omission of the county prosecutor's office and its employees that gave rise to the potential liability derived from the

11

> prosecutor's power to enforce the criminal law, and constituted an exercise of that power.
>
> [219 N.J. at 178 (emphasis added).]

To "derive[] from the prosecutor's power to enforce the criminal law" refers to core prosecutorial functions, such as investigation, seizure of evidence and prosecution. Id. at 178-79. It also includes the supervision and training of subordinate prosecutors, police officers and detectives exercising the same law enforcement authority. See Van de Kamp v. Goldstein, 555 U.S. 335, 344 (2009) (United States Attorney's Office entitled to § 1983 immunity because the failure to maintain a database to track impeachment material, while an administrative task, was "directly connected with the conduct of a trial").

The plaintiffs in Lavezzi sued the Essex County Prosecutor's Office for destruction of evidence seized and then neglected in storage. Id. at 166. Our Supreme Court was careful to draw the line between law enforcement and administrative functions. Id. at 179. If the plaintiffs' property was damaged at the conclusion of a criminal investigation, the retention of the property "derive[d] from and directly relate[d] to the [county prosecutor's] law enforcement function[.]" Ibid. However, if the plaintiffs' property was stored in a facility at the direction of the county, and the property damage resulted from

the condition or maintenance of the county facility, the claim was derived from an administrative function. Id. at 180.

Upon becoming aware Seidle was the subject of a domestic violence complaint, appellants were required to oversee the return of Seidle's service weapons. Pursuant to Attorney General Law Enforcement Directive No. 2000-3 (Directive), county prosecutors must investigate police officers who are alleged to have committed acts of domestic violence to determine whether the officer should be permitted to carry a service weapon. Attorney General, Law Enforcement Directive No. 2000-3, at 2-3 (Sept. 1, 2000). When an officer's service weapon is seized, absent a court order, the county prosecutor may authorize return of the service weapon subject to certain conditions.

Appellants argue compliance with the Directive is a law enforcement function and point to the Directive's introduction, which, in part, reads "[a]ll law enforcement agencies and law enforcement officers in the State are required to cooperate with the Attorney General to secure the benefits of a uniform and efficient enforcement of the criminal law[.]" Directive, at 1. We disagree.

Prosecutors have two separate obligations pertaining to a police officer alleged to have committed domestic violence. One is classic law enforcement, i.e., the obligation to investigate and enforce criminal laws, including instances

A-5650-16T4

of domestic violence.  N.J.S.A. 2C:25-19.  The second is the obligation to maintain control over the weapons seized from officers and to determine when and if the officers should be re-armed and allowed to serve as an officer. Directive, at 3-5.  The Attorney General acknowledged and agreed to defend and indemnify appellants as to any allegations within the former category but not the latter, because the oversight and eventual return of seized weapons is an administrative, rather than prosecutorial function of the prosecutor's office.

Indeed, in New Jersey, all weapons, firearms purchaser identification cards and permits to purchase a handgun seized under N.J.S.A. 2C:25-21(d)(1) must be delivered to the county prosecutor in the county where the alleged domestic violence occurred.  The determination of whether the weapon will be returned is subject to a civil proceeding, not a criminal proceeding, and is an administrative function of the prosecutor.  N.J.S.A. 2C:25-21(d)(3).  To that end, most prosecutor's offices in New Jersey have weapons return units dedicated to this function.

Here, compliance with the Directive related to appellants' administrative duties.  The fact that the offender in this case was a police officer does not alter the analysis.  Under the Lavezzi test, the allegations concerning the re-arming of Seidle fall squarely into the administrative category.

14

The allegations pertaining to the failure to supervise, monitor, train, retrain and discipline and Seidle's continued employment also fall into the administrative category. Coleman, 87 F.3d at 1499. Appellants assert, pursuant to Van de Kamp, that supervision of the police force is a prosecutorial function. However, the Estate has not alleged conduct that arose in connection with an instance of failure to supervise, train or discipline "intimately associated with the judicial phase of the criminal process." Van de Kamp, 555 U.S. at 345 (quoting Imbler v. Pachtman, 424 U.S. 409, 430 (1976)). Unlike Van de Kamp, the allegations in the first amended complaint of failure to supervise, monitor, train, retrain and discipline have no nexus to any criminal investigation or prosecution. Therefore, we discern no error in the decision by the Attorney General to deny defense and indemnification for liability arising from such functions, and we affirm the July 6, 2017 order.

II.

We now turn to the second appeal, A-1714-17, in which the AP defendants appeal from the Attorney General's October 27, 2017 letter denying defense and indemnification for the Estate's first amended complaint.

In his letter, the Attorney General reiterated his commitment to defend certain claims but not others pursuant to Wright. However, we discern error in

15

the Attorney General's ultimate determination to deny relief because certain law enforcement-related claims, which the Attorney General agreed to cover in the first instance, were re-pled in the first amended complaint.

Appellants are entitled to defense and indemnification with regard to the allegations arising from the exercise of their law enforcement authority. Though purportedly dismissed with prejudice, some previously dismissed allegations were simply rearranged and incorporated into the remaining claims against the appellants. Defense and indemnification by the State is still warranted for those allegations because appellants were still required to appear and seek dismissal. We include a paragraph-by-paragraph comparison in our discussion below. Accordingly, notwithstanding our deferential standard of review, we disagree with the Attorney General's conclusion denying coverage for all claims in the first amended complaint as a matter of law and reverse the October 27, 2017 order in part.

III.

In A-0075-18, appellants appeal from the August 2, 2018 blanket refusal to defend and indemnify them from claims contained in the second amended complaint. In denying the request, the Attorney General reasoned that because Judge Shipp dismissed all claims related to law enforcement and investigatory

functions, any remaining claims in the second amended complaint necessarily pertained to administrative functions.

However, the following side-by-side comparison of the original, first and second amended complaints demonstrate certain law enforcement-related allegations, previously deemed covered by the Attorney General, were again pled in the first and second amended complaints.

| Complaint Paragraph No. | First Amended Complaint Paragraph No. | Second Amended Complaint Paragraph No. |
|---|---|---|
| 27(d) | 29(d) | 29(d) |
| 65 | 67 | 78 |
| 66 | 68 | 79 |
| 68 | 70 | 81 |
| 74 | 76 | 89 |
| 76 | 78 | 91 |
| 77 | 79 | 92 |
| 78 | 80 | 93 |
| 82 | 84 | 97 |
| 85 | 87 | 100 |
| 90 | 92 | 108 |
| 101 | 103 | 145 |
| 102 | 104 | 160 |
| 103 | 106 | -- |
| 108 | 111 | -- |
| 114(9), (10) & (11) | 117(9), (10) & (11) | 202(4) & (9) |
| 116 | 119 | 179(10) &(11); 119 (listed between 202 and 203) |

A-5650-16T4

| 142 | 145 | -- |
| 144 | 147 | -- |

Many of the allegations were identical throughout all three complaints. For some claims, the only difference was the paragraph or sub-paragraph they fell under. Thus, the Attorney General should have scrutinized the first and second amended complaints and provided coverage to the extent it found claims it agreed to cover in the original complaint were re-pled. Therefore, we reverse the August 2, 2018 order in part.

IV.

On March 19, 2019, the Attorney General issued a final agency determination, A-3428-18, by way of written decision, denying appellants' request for defense and indemnification as to the third amended complaint. In dismissing the first and second amended complaints without prejudice for lack of specificity, Judge Shipp also dismissed with prejudice the portions of those complaints that related to appellants' law enforcement and investigatory functions.

In the third amended complaint, under the section entitled "Nature of the Action," the Estate identifies each appellant and states "[a]t all relevant times [appellants] were acting in an administrative capacity as opposed to a law

18

enforcement or investigatory function[.]" The Attorney General seized on this language and issued a blanket denial of defense and indemnification for all claims in the third amended complaint. However, the Attorney General overlooked portions of the third amended complaint where allegations it originally agreed to provide defense and indemnification were scattered among different areas of the complaint.

For example, the Attorney General agreed to provide defense and indemnification for claims related to "fail[ure] to file (or assist Tamara Wilson-Seidle in filing) a restraining order against Philip Seidle[.]" This same claim was made again in the third amended complaint against the AP defendants in paragraphs 514, 527, 539, and 551, yet the Attorney General declined to provide defense and indemnification. We realize the bulk of the claims brought against appellants in the third amended complaint concern compliance with the Directive, which we have explained relates to appellants' administrative duties. Nevertheless, appellants were entitled to defense and indemnification, no matter how little, for claims related to exercise of their law enforcement authority.

Ultimately, we conclude the Attorney General properly applied Wright and correctly determined which claims in the original complaint pertained to appellants' law enforcement or administrative functions. However, the Attorney

General was required to, but did not, apply the same scrutiny to the subsequent amended complaints. We reverse the Attorney General's denial of defense and indemnification as to the first amended, second amended and third amended complaints to the extent that certain allegations, previously determined by the Attorney General to relate to the exercise of law enforcement functions, and thus covered under <u>Wright</u>, were re-pled notwithstanding their purported dismissal with prejudice.

At this point, the most realistic and practical resolution is for appellants to make an application in the Law Division, pursuant to our ruling, for reimbursement to recover the portion of the costs incurred in the defense of those allegations relating to the exercise of law enforcement authority previously deemed covered by the Attorney General but for which defense and indemnification was later disclaimed. <u>See</u> <u>Lavezzi</u>, 219 N.J. at 180 (noting "the State may pursue a claim against the County for reimbursement of all or part of its costs incurred in the defense and indemnification of the [p]rosecutor's [o]ffice employees").

Affirmed in part, reversed in part.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5650-16T4